IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBORAH ORLANDO COONEY,              )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )
                                     )  No. 09 C 1920
RHONDA CASADY, ANDREW SOSNOWSKI, and )
LESLEY MAGNABOSCO                    )
                                     )
          Defendants.                )
                                     )

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed, *pro se*, a two-count complaint against two attorneys, defendants Casady and Sosnowski, who represented the Department of Children and Family Services ("DCFS") during plaintiff's administrative appeal of state court proceedings relating to custody of her children, and a court reporter, defendant Magnabosco, who plaintiff claims was responsible for alterations in the official transcripts of those proceedings. In the first count, plaintiff asserts a claim under 42 U.S.C. § 1983 for due process violations. In the second count, she asserts a state law claim of intentional infliction of emotional distress ("IIED"). Each defendant has moved to dismiss the complaint on various grounds. For the reasons that follow, the motions are denied.

I.

Plaintiff's claims stem from proceedings that began in 2001, when her ex-husband sought custody of the couple's two children.

At some point during the custody case, DCFS received a report of child abuse against plaintiff and began an investigation. This investigation--which plaintiff alleges was fraught with irregularities--culminated in an "indicated" finding of mental injury against plaintiff.[1]  Plaintiff filed an administrative appeal of the indicated finding, and it is defendants' conduct during and after the administrative appeal that she challenges in the present action.

Plaintiff alleges that defendant Casady represented DCFS in the administrative appeal from its inception through January 18, 2007, when she withdrew her appearance.  During that time, Casady allegedly engaged in a pattern of misconduct including dilatory discovery tactics, amending the indicated finding to include substantial risk of physical harm without disclosing her basis for the amendment, filing a false police report against plaintiff's counsel in an attempt to disrupt the proceedings, engaging in ex parte communications with the Administrative Law Judge, and, at some point after the appeal was denied, directing defendant

---

[1] 325 ILCS 5/7.12 provides that upon receipt of a report of abuse or neglect, DCFS must determine whether the report is "indicated," "unfounded," or "undetermined."  I understand from the complaint and the parties' briefing that an "indicated" finding results in the name of the individual investigated being listed in the State Central Register, which is accessible by employers and others.  325 ILCS 5/7.16 provides that an individual subject to an indicated finding has the right to a hearing to appeal the finding and to request expungement of his or her name from the State Central Register.

Magnabosco to falsify evidence in the record by altering the transcripts of the administrative hearings.

Plaintiff alleges that defendant Sosnowski took over DCFS's representation after Casady withdrew. She claims that Sosnowski was "aware of Casady's wrongful conduct and of the deficiencies in the DCFS case against [plaintiff]," but intentionally "continued with the course of conduct began (sic) by Casady." Plaintiff further asserts that Sosnowski failed to disclose to plaintiff that he was Chief Deputy General Counsel for DCFS, representing instead that he was "in private practice." Sosnowski also failed to provide plaintiff with a complete and accurate set of DCFS exhibits for the administrative hearing, and, like Casady, allegedly directed defendant Magnabosco to alter the transcripts of the hearings.

Plaintiff asserts two injuries based on Casady and Sosnowski's unconstitutional conduct: 1) her administrative appeal was denied, and 2) she was listed on DCFS's central register and terminated from her employment. Plaintiff also alleges that all of the defendants' conduct was extreme and outrageous, and that they knew their actions would cause her severe emotional distress.

Plaintiff's allegations against Magnabosco--whose involvement in the alleged misconduct began after the administrative appeal was denied on March 30, 2007--are narrow but a bit confusing (as discussed in a later section). Plaintiff claims that Magnabosco,

acting at the direction of Casady and Sosnowski and in concert with them to deprive plaintiff of due process and to inflict emotional distress, altered the official transcripts of the proceedings after the conclusion of those proceedings in ways that bolstered DCFS's case and covered up wrongdoing by the remaining defendants.

Plaintiff asserts two specific injuries caused by "the altered transcripts"[2]: 1) the alterations "benefited (sic) the DCFS in maintaining its indicated findings" against her, and 2) plaintiff's circuit court appeal of the administrative findings was extensively delayed.

In their various motions, defendants assert that dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that 1) I lack jurisdiction under the *Rooker-Feldman* doctrine; 2) the statute of limitations on plaintiff's claims has run; 3) defendant Casady is entitled to absolute prosecutorial immunity, or, in the alternative, qualified immunity; and 4) plaintiff fails to state either a § 1983 conspiracy claim or a state law IIED claim.

---

[2]Identifying the transcripts, rather than Magnabosco's conduct, as the cause of the injuries is consistent with plaintiff's apparent position that the first injury she asserts occurred prior to Magnabosco's involvement. Nevertheless, it does confound the scope of her claim against Magnabosco. As I discuss further below, this confusion is not fatal to plaintiff's claim at this stage.

II.

A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In resolving defendants' motions, I must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor*. McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Plaintiff must, nevertheless, allege sufficient factual material to suggest plausibly that she is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

A. *Rooker-Feldman Doctrine*

All three defendants assert the *Rooker-Feldman* doctrine as a basis for dismissal. "Simply put, the *Rooker-Feldman* doctrine precludes individuals from seeking review of state court judgments in federal district court." *Cooney v. Rossiter*, No. 07 C 2747, 2008 WL 3889945 (N.D. Ill., Aug. 20, 2008) (Aspen, J.) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 465 (1983); and *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine is a narrow bar to federal court jurisdiction with "extremely limited applicability: it applies only to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

judgments.'" *TruServ Corp. V. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284). The court in *TruServ* emphasized that the *Rooker-Feldman* doctrine is inapplicable unless the state court proceedings in question have ended. *TruServ*, 419 F.3d at 591. In *Rossiter*, a case arising, in part, out of the same proceedings challenged in this case, plaintiff and two other individuals brought a putative class action alleging a § 1983 conspiracy against twelve defendants involved in the plaintiffs' respective custody proceedings. In that case, the court rejected the defendants' *Rooker-Feldman* argument on the ground that the state court proceedings related to the plaintiffs' constitutional claims were ongoing. *Rossiter*, 2008 WL 3889945 at *2. It appears, based on the record before me, that that is still the case with respect to plaintiff's proceedings. This is one reason why, under the reasoning in *TruServ*, the *Rooker-Feldman* doctrine does not bar her claim.

There are other reasons, too. On its face, the complaint seeks damages against the defendants, as well as a generic request for "other further relief as this Court shall [d]eem just and equitable." It does not seek to overturn the substantive outcome of the administrative proceedings. Instead, a reasonable interpretation of the complaint is that plaintiff seeks damages for injuries inflicted "en route to the judgment," *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006), including emotional distress.

In *Loubser*, the court held that the *Rooker-Feldman* did not bar the plaintiff's § 1983 suit, since the relief she sought "would go far beyond merely modifying" the outcome of the state proceedings the defendants were alleged to have corrupted. *Id*. at 441-42. In *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), the court framed the question by asking whether the plaintiff (who had also alleged a § 1983 conspiracy) could show injury from the alleged conspiracy that was independent of the adverse outcome of state proceedings. Holding the *Rooker-Feldman* doctrine inapplicable, the court reasoned as follows:

> [S]uppose that although there was this nefarious conspiracy his suit had no merit and so would have failed even if there had been no conspiracy. Then the conspiracy did him no harm and without harm there is no tort, *Niehus v. Liberio*, 973 F.2d 526, 531-32 (7th Cir.1992), a principle as applicable to constitutional torts as to common law torts. *Buckley v. Fitzsimmons*, 20 F.3d 789, 796 (7th Cir.1994). To show harm and thus keep the present suit alive, Nesses would have to show that the decision by the Indiana court in his suit for breach of contract was erroneous, and that, it may appear, *Rooker-Feldman* bars him from doing. But the doctrine is not that broad. Were Nesses merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his...then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm.

*Nesses*, 68 F.3d at 1005. Under the reasoning in *Nesses*, the *Rooker-Feldman* doctrine does not strip my jurisdiction over plaintiff's claim because she asserts precisely that the defendants

caused damages that include (but are not limited to) an adverse decision in the administrative appeal. The distinction the Seventh Circuit drew in *Nesses* between claims that are barred by *Rooker-Feldman* and those that are not is perhaps fine; but it is no finer than the scope of the *Rooker-Feldman* doctrine is narrow, as the Supreme Court reiterated in *Exxon Mobile*.[3]

I am mindful that the Seventh Circuit has, since *Nesses*, refined the analysis it articulated there, and that some cases, especially *Newman v. State of Indiana*, 129 F.3d 937 (7th Cir. 1997), could be read to support the application of the Rooker-Feldman doctrine here. In *Newman* (an opinion, like *Nesses*, that was authored by Judge Posner, but that made no mention of the earlier decision), the court held that a couple who had unsuccessfully sought to adopt a child could not bring an action in federal court

---

[3]Indeed, to illustrate the restricted scope of the doctrine, the *Exxon Mobile* Court cited what it called "[t]he few decisions" in which it had previously mentioned *Rooker* and *Feldman* "only in passing or to explain why those cases did not dictate dismissal. 544 U.S. 280, 287. Among these was *Verizon Md. Inc., v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 at n.3 (2002), which the Court cited for the proposition that "*Rooker-Feldman* does not apply to a suit seeking review of state agency action." 544 U.S. at 287. Indeed, the cited footnote in *Verizon* states, "[t]he doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency." The Court did not expand upon this point further in either *Verizon* or *Exxon Mobile*, but to the extent the administrative appeal in this case may appropriately be characterized as a decision of a state administrative agency, rather than as a judicial decision, the Court's observation suggests a further reason the *Rooker-Feldman* doctrine does not bar plaintiff's claim here.

to recover damages for constitutional violations allegedly caused by the wrongful conduct of state actors over the course of the adoption proceedings. The court explained that the *Rooker-Feldman* doctrine barred the plaintiffs' religious discrimination and due process claims in federal court because:

> [T]he defendants' machinations caused [the plaintiffs] emotional distress and related harm *by preventing them from keeping Laura*. Their alleged right to keep her is the essential link between the defendants' misconduct and the damages caused. But that was the claim of right litigated adversely to them in the Indiana suits. Relitigation is barred by *Rooker-Feldman*, and also by res judicata.

*Newman*, 129 F.3d 937. Under the reasoning in *Newman*, which indeed bears a certain resemblance to the instant case, it is not the nature of plaintiff's *claim*, but rather the source of her alleged *injury* that must be scrutinized for the purpose of determining whether her suit is barred by *Rooker-Feldman*. *See also Long v. Shorebank Development Corp.*, 182 F.3d 548 (7th Cir. 1999) ("fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.") (Citation omitted) Viewed in this light, the viability of plaintiff's federal claim is a closer call, since most of plaintiff's alleged injuries arguably flow either directly or indirectly from the administrative decision upholding DCFS's indicated finding. Nevertheless, I cannot say, based on the present record, that absent the adverse administrative decision, plaintiff would have no claim for damages

arising out of the defendants' alleged misconduct "en route to the judgment," *Loubser*, 440 F.3d at 442, or their conduct after the judgment was entered.

Although the issue is exceedingly close, the foregoing considerations, on balance, leave me unpersuaded at this stage that plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

## B. Statute of Limitations

All three defendants assert that the statute of limitations on plaintiff's § 1983 action has run, and defendant Casady further asserts that the limitations period on plaintiff's state claim has also expired. Both claims are subject to a two year statute of limitations in Illinois. *Rossiter*, 2008 WL 3889945 at *8 (citing *Behavioral Inst. of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (limitations period in § 1983 actions governed by limitations period for personal injury actions in state in which injury occurred); and *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993) (Section 1983 actions in Illinois subject to two-year statute of limitations)); *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 798 N.E. 2d 75, 85 (Ill. 2003) (IIED claims subject to two-year statute of limitations as a form of personal injury). While the length of the applicable limitations period is governed by state law, "federal law...determines the accrual" of plaintiff's § 1983 claim. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Accordingly, plaintiff's federal claim

accrued when she knew or should have known that her constitutional rights were violated. *Id.* Under Illinois law (which I presume governs accrual of plaintiff's IIED claim, although the parties do not address this issue), the limitations period begins to run "when facts exist that authorize one party to maintain an action against another." *Feltmeier*, 798 N.E. 2d at 85. Illinois law also provides, however, that claims based on a continuing course of conduct may be subjected to the "continuing tort" or "continuing violation" rule, under which "the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Id*.

It is not apparent, at this stage, that plaintiff's claims are barred by the statute of limitations. First, all three defendants were allegedly involved with the transcript alterations (an allegation defendants Casady and Sosnowski flatly ignore), which were allegedly made after March 30, 2007.[4] This case was filed on March 27, 2009, less than two years later. Accordingly, an appropriately generous reading of the complaint suggests that the complaint was timely. Moreover, the due process violations plaintiff asserts did not occur until plaintiff's administrative appeal was adjudicated against her. *See Buckley v. Fitzsimmons*, 20 F.3d 789, 794-95 (7th Cir. 1994) (constitutional violation occurred

---

[4]This is, at least, one plausible interpretation of the complaint.

when coerced third-party statements were used at trial, not at time statements were obtained).  Accordingly, defendant Magnabosco's argument that plaintiff's § 1983 claim accrued at the time she discovered errors in the official transcript is unpersuasive.  I am mindful, as well, that the statute of limitations is an affirmative defense, the adjudication of which at the motion to dismiss stage must be approached with extreme caution.  *Walker v. Thompson*, 288 F.3d 1005, 1010 (validity of affirmative defense must be both apparent from complaint and unmistakable, "so that the suit is fairly described as frivolous").  That is not the case here. Accordingly, I do not conclude at this stage that plaintiff's complaint was untimely.

## C. Absolute and Qualified Immunity

Only defendant Casady asserts the defenses of absolute, or, in the alternative, qualified immunity.  Like the statute of limitations, immunity is an affirmative defense, which a plaintiff ordinarily need not anticipate in her complaint.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  In this case, I cannot determine based on the complaint alone that Casady is entitled to either absolute or qualified immunity.  In fact, Casady all but concedes, in her reply, that her alternative defense of qualified immunity is "too fact-driven to be determined at this stage of the proceeding." Accordingly, I focus on her defense of absolute immunity.

Casady's argument has superficial appeal: the Supreme Court has indeed held that public prosecutors are entitled to absolute immunity under § 1983 for acts undertaken within the scope of the judicial process, *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and that because agency attorneys presenting evidence in administrative hearings are functionally equivalent to public prosecutors, they are entitled to the same immunity. *Butz v. Economou*, 438 U.S. 478, 516-17 (1978). *See also Millspaugh v. County Dep't of Public Welfare of Wabash County*, 937 F.2d 1172, 1175-76 (7th Cir. 1991) (social worker who initiated child custody proceedings entitled to absolute immunity for in-court conduct). Moreover, many of the allegations plaintiff lodges against Casady relate to conduct that appears to fall squarely within the realm of actions "intimately associated with" her role as an advocate for DCFS during quasi-judicial proceedings, and thus within the scope of absolute immunity under *Imbler*. 424 U.S. at 430.

The primary argument plaintiff raises in opposition to Casady's claim of immunity is that because Casady was (the parties agree) an independent contractor working for DCFS, fact issues relating to the scope of Casady's employment prevent me from resolving whether she is entitled to immunity. Plaintiff relies heavily on *B.F.G v. Blackmon*, No. 08 C 1565, 2008 WL 4155263 (N.D. Ill., Sept. 8, 2008) (Conlon, J.), a case unrelated to this one, in which the court rejected Casady's claim (the same Casady, to be

sure) of absolute or qualified immunity for alleged misconduct during an unrelated DCFS administrative appeal. The court's ruling in that case in turn relied heavily on the Supreme Court's decision in *Richardson v. McKnight*, 521 U.S. 399 (1997), and on the Seventh Circuit's decision in *Sain v. Wood*, 512 F.3d 886 (7th Cir. 2008), both of which declined to extend qualified immunity to private individuals working as contractors for the state. Although I agree with the *B.F.G.* court's analysis of *Richardson* and *Sain* to the extent those cases demonstrate why Casady could not, as a defendant in *B.F.G.*, prevail on her assertion of qualified immunity on an undeveloped factual record, *Richardson* and *Sain* do not, it seems to me, resolve the issue of absolute immunity. The defendants in *Richardson* (two privately employed prison guards working under contract with the state) and *Sain* (a doctor employed by a private healthcare corporation as the clinical director of a state-run detention facility) asserted no entitlement to absolute immunity, and the decisions in those cases resolved only whether qualified immunity was appropriate.[5]

---

[5]As the Seventh Circuit observed in *Millspaugh*, 937 F.2d at 1175, "the dividing line between absolute and qualified immunity is whether the injury depends on the judicial decision. If there would be no loss but for the judge's acts, then the prosecutor or witness who induces the judge to act has absolute immunity." (citing *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1239-45 (7th Cir. 1990)). Because, as discussed below, plaintiff alleges that Casady's conduct caused an injury that did not flow from the administrative judge's denial of her appeal--subsequent delays in the resolution of her state court proceedings--any immunity Casady may have from suit can only be qualified.

Nevertheless, an independent basis for rejecting Casady's absolute immunity defense exists: plaintiff attributes to Casady at least one wrongful act--directing Magnabosco to alter the official court transcripts--that occurred (so far as the record shows) entirely outside of Casady's representation of DCFS in the administrative appeal. And, importantly, the complaint contains no indication that Casady was, at the time, involved in plaintiff's further appeals. Under these circumstances, Casady is not entitled to absolute immunity.

In *Houston v. Partee*, 978 F.2d 362 (7th Cir. 1992) the Seventh Circuit rejected the defendant prosecutors' assertion of absolute immunity from suit for their conduct in post-trial proceedings with which they were not involved, reiterating that "a prosecutor's entitlement to absolute immunity is grounded in 'the nature of the functions he was performing in this case.'" *Id.* at 366 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985). The court explained, "[w]e do not decide whether a *prosecutor* is entitled to absolute immunity; we decide whether a prosecutor *performing a particular function* is entitled to absolute immunity." *Houston*, 978 F.2d at 366 (original emphasis) (citations omitted). Once again, Casady pointedly ignores the allegation that she conspired with her co-defendants *after* the conclusion of the administrative appeal, by which point she was no longer involved in the case. Accordingly, her argument and authorities in support of absolute immunity are

unpersuasive, and I do not conclude, based on the allegations in the complaint, that she is absolutely immune from suit.

### D. Failure to State a Claim

Each of the defendants asserts that plaintiff fails to state a viable § 1983 conspiracy claim. Casady argues that the allegations in the complaint are legally insufficient to support a claim that plaintiff's constitutional rights were violated. Magnabosco raises several arguments: first, that she is not herself a state actor, and that the allegations in the complaint are insufficient to link her to her co-defendant state actors' conspiracy; second that the complaint fails to allege a "meeting of the minds" among defendants to deprive plaintiff of her constitutional rights; and third, an argument Magnabosco captions "impossibility of proximate cause," but which I understand to assert, in essence, that plaintiff pleads herself out of a constitutional claim against Magnabosco with the allegation that the asserted violation occurred at the time plaintiff's administrative appeal was denied, at which point, all parties agree, Magnabosco had not entered the scene. Defendant Sosnowski incorporates Magnabosco's arguments generally, and he reiterates specifically that plaintiff fails to plead facts suggesting a "meeting of the minds."

At the outset, it must be said that plaintiff—a non-lawyer representing herself—has done a commendable job fending off

16

defendants' various challenges, responding to their attacks with lucid arguments and citations to pertinent (and often persuasive) authorities. In response to defendants' contention that she has failed sufficiently to plead a "meeting of the minds," for example, plaintiff correctly responds that she need not have done so: the authorities on which defendants rely that suggest the contrary uniformly precede the Supreme Court's decision in *Swierkiewicz v. Sorema* N.A., 534 U.S. 506 (2002) (federal notice pleading under Rule 8(a) applies to § 1983 claims, citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)). The Seventh Circuit has since made clear that pleading a "meeting of the minds" is precisely the type of factual matter that need not be asserted in the complaint. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). To state a § 1983 claim, plaintiff must allege only two elements: that defendants deprived her of a constitutional right, and that they did so acting under color of state law. *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000). And a plaintiff alleging a § 1983 conspiracy need only indicate--as plaintiff's complaint surely does--"the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Hoskins,* 320 F.3d at 764*,* quoting *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *see also Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (same). The *Hoskins* court went on to add explicitly that "any of our older

17

opinions requiring more than notice of the time, scope, and parties cannot be squared with *Swierkiewicz* and conspiracy's absence from the list in Rule 9(b)." 320 F.3d at 764. These cases take care of defendants' arguments that plaintiff has not adequately pled a conspiracy, including Magnabosco's more specific contention that the complaint fails to link her with a conspiracy involving state actors.[6]

Next is the argument that plaintiff has not sufficiently alleged a constitutional injury. Clearly she has. The complaint asserts that defendants' conduct deprived her of procedural due process in two ways: it undermined her right to a fair hearing in the administrative appeal, and it delayed her ability to obtain a meaningful remedy in the state proceedings.[7] Furthermore,

---

[6]Plaintiff also argues that whether Magnabosco is herself a state actor is a question of fact that cannot be resolved prior to discovery. Plaintiff's argument is well-taken, but because I conclude that she adequately pleads a conspiracy between Magnabosco and her co-defendants (who do not dispute their status as state actors), she has sufficiently alleged that Magnabosco acted "under color of state law," regardless of her possible status as a private citizen. *Brokaw*, 235 F.3d at 1016 ("if a private citizen conspires with a state actor, then the private citizen is subject to Section 1983 liability.")

[7]Plaintiff highlights the significance of a speedy remedy by pointing out that the custody case at the heart of the state proceedings is "rapidly becoming moot due to [the] ages of Deborah's sons." Of course, plaintiff's substantive due process right to familial relations, recognized in Brokaw, is not directly implicated here, but is presumably at stake in the underlying proceedings and may ultimately be relevant here on the issue of whether the alleged delays deprived her of the procedural right to be heard "at a meaningful time." *Mathews v. Eldrige*, 424 U.S. 319, 333 (1976); *see also Federal Deposit Ins.*

plaintiff's allegations against each defendant are sufficient to identify their participation in these alleged violations.

Whether plaintiff has pled herself out of a constitutional claim against Magnabosco is a closer call. The complaint does indeed contain contradictory allegations: on the one hand, it asserts that the "altered transcripts" (which plaintiff attributes to Magnabosco, working in concert with her co-defendants) prejudiced the plaintiff in her administrative appeal by unfairly bolstering DCFS's case against her. In other words, she alleges that the altered transcripts played some role in the decision to deny her appeal. On the other hand, however, plaintiff unmistakably claims that Magnabosco altered the transcripts *after* the conclusion of her administrative appeal, so the alterations could not have affected its outcome. I am not sure what to make of this contradiction, which surely will need to be sorted out at some point in the litigation. But inconsistencies notwithstanding, one plausible reading of plaintiff's allegations is that Magnabosco's conduct after the administrative appeal caused an unconstitutional delay in her state court appeal. If the facts as they are later developed show that Magnabosco was in no way responsible for any earlier constitutional violation, then plaintiff's claim against her will be appropriately narrowed. For now, I conclude that

_____

*Corp. v. Mallen*, 486 U.S. 230, 242 (1988) (importance of private interest at stake relevant to determine whether delay is justified).

plaintiff has at least minimally met the requirements of pleading a § 1983 claim against all of the defendants.

Let there be no mistake: plaintiff's conspiracy allegations have a distinctly paranoid *gestalt*, and it is unlikely that her claims have merit. But they are certainly no more fantastical than the plaintiff's claims in *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), in which the Seventh Circuit reversed dismissal of a § 1983 conspiracy claim. The *Loubser* plaintiff sued more than forty individuals--including "state judges and court reporters, Loubser's own lawyers, her former husband, building contractors, the owner of a jewelry store, and numerous friends and relatives of the other conspirators"--who she alleged conspired to "destroy her financially and drive her out of the country" by corrupting her divorce proceedings. 440 F.3d at 441. In that case, too, lawyers and court reporters were alleged to have conspired to alter official transcripts. *Id*. Writing for two of the three judges on panel, Judge Posner noted that although it was "highly improbable" that the suit had merit, the plaintiff's allegations were not so far beyond the pale as to be dismissed out of hand as frivolous. *Id*. (Contrasting the case with *Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000), in which the plaintiff claimed that the United States and China had conspired to "bio-chemically and bio-technologically infect and invade" people with a "mind-reading and mental torture device," and to have developed space technologies that included

extra-terrestrial relocation services). Plaintiff's allegations clearly come closer to *Loubser* than to *Lee*.

Finally is the argument that plaintiff has not adequately pled a state-law claim for IIED. When a federal court entertains state law claims, the federal notice-pleading standard applies. *Christensen v. County of Boone, IL*, 483 F.3d 454, 466 (7ᵗʰ Cir. 2007). Accordingly, plaintiff need not plead "all of the facts that would be necessary to prevail" on her IIED claim, but instead need only "notify the defendant of the principal events." *Id*. The complaint does this, taking the wind out of the sails of defendant Sosnowki's argument that plaintiff's claim must be dismissed for lack of factual support.[8] Several defendants also contend that the conduct alleged in the complaint is insufficiently extreme and outrageous. It is true that under Illinois law, a claim for IIED requires, among other elements, that the alleged conduct be "extreme and outrageous." *Id*. (citing *Public Fin. Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765, 767-68 (1976)). While plaintiff may not ultimately succeed in convincing a jury that that was the case here, defendants offer no authority for

---

[8]This embraces his specific assertions that the complaint fails to plead facts sufficient to show that defendants acted intentionally, that plaintiff suffered "severe" injury, and that the injury was caused by defendants' conduct, all of which are indeed elements of the tort. *Cangemi v. Advocate South Suburban Hospital*, 364 Ill.App.3d 446, 470 (Ill.App.Ct. 2006).

holding the alleged conduct insufficiently extreme and outrageous as a matter of law.

III.

For the foregoing reasons, defendants' motions to dismiss are denied.

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge

Dated:  September 11, 2009